IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
SPRINGFIELD DIVISION

| | |
|---|---|
| LAMIKCO TWANET MAGEE<br><br>    Plaintiff,<br><br>v.<br><br>AMHERST-PELHAM REGIONAL PUBLIC SCHOOLS and individually<br>MICHAEL MORRIS,<br>and DOREEN CUNNINGHAM, and<br>DOUGLAS SLAUGHTER<br><br><br>    Defendant. | Civil Action No.:<br><br><u>Jury Trial Demanded</u> |

## **COMPLAINT**

COMES NOW Plaintiff Lamikco Twanet Magee, by and through her undersigned counsel, files this lawsuit against Defendants Amherst Pelham Regional Public Schools (ARPS), its former Superintendent Michael Morris, its current Interim Superintendent Douglas Slaughter and its former Director of Diversity, Equity, Inclusion, and Human Resources Doreen Cunningham.

**INTRODUCTION**

Plaintiff brings various claims to hold her Amherst Pelham Regional Public Schools and its leadership accountable for violating her rights under the non-retaliation provisions of Title VII of the Civil Rights Act of 1964, M.G.L. c151B, M.G.L. 150E and the First Amendment. Plaintiff also asserts claims of defamation, breach of contract, intrusion on privacy and negligent infliction of emotional distress.

Plaintiff complained about Defendants' failure to address various violations of law and policy, including internal discrimination complaints, grievances for violations of the non-discrimination clauses in collective bargaining agreements, and unfair labor practice charges for retaliation and discrimination. In response, Defendants retaliated through various adverse actions, including termination of her employment. Defendants' discriminatory, defamatory, harassing and retaliatory conduct resulted in damage to Plaintiff's reputation, loss of employment opportunities, anxiety, fear, insomnia, extreme stress and depression. Defendants' actions caused a deterioration of the Plaintiff's mental health to the extent she was forced to take medical leave.  The Plaintiff is currently under treatment to manage the trauma caused by the Defendants.

## II. JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over the federal claims asserted in this action under 28 U.S.C. §§ 1331, 1343, and 1367.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as Defendants conduct business in this District and division, and the events or omissions giving rise to the claims occurred in this District and division.

3.     Plaintiff asserts state based claims under the supplemental jurisdiction of this court, pursuant to 28 U.S.C. § 1367.

## III.  PARTIES

4.     Plaintiff Lamikco Twanet Magee (hereinafter, "Ms. Magee" or "Plaintiff") resides in Hampshire County, and is employed by Defendants. Plaintiff is a public employee of Amherst-Pelham Regional Public Schools and a private citizen as defined by Title VII, Sec. 2000e. (Section 701f), M.G.L. 151B Section 1(6), 150E Section 1.

5.     Defendant, Amherst-Pelham Regional Public Schools ("ARPS"), is a municipal school district responsible for the administration of a public school system, and has a principal place of business located at 170 Chestnut Street, Amherst, MA  01002.  ARPS is a public employer as defined by Title VII, M.G.L. 151B, and M.G.L. 150E, and may be served with process via its attorney Marc L.

Terry at the law firm of Mirick, O'Connell, DeMallie & Lougee, LLP 1800 West Park Drive, Suite 400, Westborough, MA 01581-3926.

6.      Defendant, Michael Morris, former Superintendent Amherst-Pelham Regional Public Schools, was an administrator of the public school system.  Michael Morris was a public employer as defined by M.G.L. 151B, and M.G.L. 150.  Morris may be served with process at Westfield Public Schools, 94 North Elm Street, Westfield, MA 01085 or via his attorney Marc L. Terry at the law firm of Mirick, O'Connell, DeMallie & Lougee, LLP 1800 West Park Drive, Suite 400, Westborough, MA 01581-3926.

7.      Defendant, Douglas Slaughter is the Interim Superintendent and an administrator of the public school system.  Douglas Slaughter is a public employer as defined by M.G.L. 151B, and M.G.L. 150.  Slaughter may be served with process at 170 Chestnut Street, Amherst, MA  01002 or via his attorney Marc L. Terry at the law firm of Mirick, O'Connell, DeMallie & Lougee, LLP 1800 West Park Drive, Suite 400, Westborough, MA 01581-3926.

8.      Defendant, Doreen Cunningham, was Assistant Superintendent of Diversity, Equity, Inclusion and Human Resources. She was an administrator of the public school system. Doreen Cunningham was a public employer as defined by M.G.L. 151B, and M.G.L. 150.  Cunningham may be served with process at her business address of 35 Savory Drive, Chicopee, MA 01020  or 170 Chestnut Street, Amherst,

MA 01002 or via her attorney Peter Vickery at the Law Office of Peter Vickery located at 27 Pray Street, Amherst, MA 01002.

9.    Defendants are public employers as defined by Title VII, Sec. 2000e (Section 701b), M.G.L. 151B, Section 1(5), 150E Section 1.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.    On August 7, 2023, Plaintiff timely filed a charge with the Massachusetts Commission Against Discrimination ("MCAD"), alleging harassment, discrimination, and retaliation under Title VII and c. 151B.  Plaintiff received a Right to Sue from MCAD on or about January 8, 2024. *See* Ex. A1 (Right to Sue Letter - MCAD 23SEM02039/EEOC 16C-2023-02061).

11.    On November 20, 2023, Plaintiff timely filed a second charge with the Massachusetts Commission Against Discrimination ("MCAD"), alleging harassment, discrimination, and retaliation under Title VII and c.151B.  Plaintiff received a Right to Sue Letter from MCAD on or about March 4, 2024. See Ex. A2 (Right to Sue Letter MCAD 23SEM03209/EEOC 16C-2024-00380).  This lawsuit is initiated prior to the statutory deadline of 90 days for both charges.

## IV.  FACTUAL ALLEGATIONS

12.    Plaintiff Lamikco Twanet Magee ("Plaintiff") is an African-American female who is an experienced, highly educated and accomplished educator currently serving

in the role of Dean of Students at Amherst Regional Middle School, employed by Amherst Regional Public Schools.

13.    Plaintiff is a disabled United States Air Force Veteran and has been an educator for over 20 years. Plaintiff's work performance has been exceptional.

14.    Plaintiff served in the role of Amherst Pelham Education Association union president from November 8, 2020 through June 30, 2023.

<u>Protected Activity and Adverse Actions</u>

15.    Plaintiff continuously complained about Defendants' failure to address various violations of anti-discrimination law, including internal discrimination complaints, external discrimination complaints with the Office of Civil Rights, grievances for violations of collective bargaining agreements non-discrimination clauses, and unfair labor practice charges for retaliation and discrimination.

16.    In response, Defendants retaliated through adverse employment actions, publication of defamatory statements regarding Plaintiff, and created a retaliatory hostile working environment for Plaintiff.

17.    October 13, 2022 to present, Plaintiff engaged in protected activities of complaining about or opposing discriminatory conduct, and shortly thereafter Defendants subjected Plaintiff to various adverse actions.

18.    October 17, 2022, Plaintiff filed an internal complaint alleging racial discrimination in hiring.

19.    On October 27, 2022, Plaintiff filed an Office of Civil Rights discrimination complaint alleging disability discrimination on behalf of students with disabilities.

20.    November 3, 2022, ARPS' Education Team Leader, Nancy Stewart, retaliated by refusing to meet with Plaintiff, which was necessary for Plaintiff to fulfill her role as the special education department leader.

21.    On December 12, 2022, Plaintiff filed a complaint regarding Joann Smith alleging racial discrimination.

22.    Defendants retaliated on March 20, 2023 by rejecting her application for a job opportunity in favor of less qualified candidates.

23.    In addition to the close temporal proximity, Defendants and their confederates made a number of statements constituting direct evidence of their retaliatory motives. For example, on May 14, 2023, a witness to the Cunningham preparation and printing of a defamatory flyer was told by Cunningham "Stuff going to come down about Meka."

24.    Cunningham also submitted a statement to the School Committee for public comment on May 16, 2023. The statement was read aloud to the audience in attendance that Plaintiff is "a woman scorned" regarding her candidacy for the job opportunity.

25.    On or about June 6, 2023 the Defendants refused to offer Plaintiff an Education Team Leader position although she was a qualified internal candidate.

26.    Within days of filing an MCAD complaint, on or about August 10, 2023, the Defendants locked Plaintiff out of her email and terminated Plaintiff's employment, with no prior notice or warning.  After protesting the retaliatory termination, she was reinstated.

27.    In September 2023, Plaintiff applied for the position of Dean of Students.  The posting indicated the Dean of Students was an administrator position.  The Defendants placed Plaintiff in the position but denied her the promotion to administrator.

28.    November 13, 2023 the ARPS' HR Administrator sent an email to Plaintiff explaining that  her approval for professional development leave was rescinded, despite Plaintiff  having already taken leave.

<u>Constitutional Free Speech Retaliation</u>

29.    As an employee, union official and a citizen, Plaintiff repeatedly spoke out against discrimination, which is a matter of public concern.

30.    Plaintiff's anti-discrimination advocacy and pro-union activities were motivating factors in the adverse action against the Plaintiff.

31.    Defendant Superintendent Michael Morris, Assistant Superintendent Doreen Cunningham and Interim Superintendent and other administrators  took various adverse actions against Plaintiff, under color of law, which resulted in the deprivation of Plaintiff's constitutional right and federal statutory right.

Privacy Violation

32.    Defendants seriously interfered with Plaintiff' right to privacy by publishing and discussing in public forums Plaintiff's confidential personnel records, application and evaluative scoring for a Principal position.

33.    Defendants' own records reflect that Doreen Cunningham signed a confidentiality agreement, pledging not to publicly disclose any information related to Plaintiff's candidacy for the principal position.   (See Ex B - Confidentiality Agreement).

34.    In violation of the agreement, Cunningham disclosed Plaintiff's confidential personnel information in a malicious attempt to embarrass and discredit Plaintiff's advocacy against discriminatory practices in the ARPS school system.

Defamation

35.    Defendants' own independently commissioned investigation revealed that numerous witnesses who attended the emergency meeting of the Amherst-Pelham Regional School Committee held on May 16, 2023, confirmed that the offensive and disturbing flyer were disseminated to attendees.

36.    Witnesses indicated they were either handed the flyer or found the flyer under the windshield wipers of their cars. The flyer that witnesses acknowledged was seen and distributed to attendees at the meeting is attached hereto as Exhibit C.  (*See* Ex C - Edward R Mintnick's Investigative Report at p 44 at ¶ 89.)

37.     More than fifty people were crowded into the school library where the meeting was convened and were joined by another 141 who followed the proceedings through Amherst Media's simulcast. (Ex. C at p 46 ¶ 90).

38.     Doreen Cunningham, the author and source of the flyer, published false and defamatory statements regarding Plaintiff and two other ARPS employees (hereinafter " Employee 2" and "Employee 3) to third parties and the general public that she knew were false, or acted in reckless disregard as to whether the statement was true or false. (Ex. C at p 47 ¶ 94).

39.     Cunningham disseminated a defamatory flyer May 16, 2023 library meeting, which contained numerous accusations made against Plaintiff, including references to her purportedly having a criminal record and engaging in alleged unethical behaviors at a prior employer. (Ex. C at p 47 ¶ 94)

40.     An independent investigator hired by ARMS determined "that a reasonable person would find the commentary about Plaintiff in the flyer highly disrespectful, hostile, and possibly defamatory.  (Ex. C at p 47 ¶ 94)

41.     The defamatory flyer also alleged Employee 2 and Employee 3 practiced witchcraft at ARMS. The investigator found that Employee 2 and Employee 3  did not practice witchcraft in ARMS and other employees wrongfully spread rumors about such conduct. (Ex. C at p 47 ¶ 94)

42.    The independent investigation revealed that one of Cunningham's coworkers (hereinafter "Employee 1") reported that the day before the School Committee meeting on May 15, 2023, Cunningham told her, "Stuff going to come down about Meka" meaning the Plaintiff. (Ex. C at p 47 ¶ 95).

43.    Employee 1 informed the investigator that on the day of the School Committee meeting (May 16, 2023), she observed Cunningham working on a statement and Cunningham asked her to look at it.  Employee 1 told Cunningham to hold on as she was working on a project. The coworker returned to Cunningham's desk a half-hour later at approximately 3:15 p.m.  (Ex. C at p 47 ¶ 95)

44.    Cunningham then told Employee 1 she had already submitted her statement. However, Cunningham then asked the coworker to view a document on her computer.   The Employee 1 indicated it was the flyer in question that was disseminated later that evening at the School Committee meeting. (Ex. C at p 47 ¶ 95)

45.    After reading the accusations in the flyer about the Employee 1 asked Cunningham, "Is that true?" and Cunningham responded, "Yes." After reading the particular comment about Employee No. 2 about Employee No. 3 practicing witchcraft, the Employee No. 1 said to Cunningham,"What! You cannot say that." Cunningham responded, "It's true." (Ex. C at p 47 ¶ 95)

46.    Cunningham then said, "I am going to send this to the printer, can you pick them up." Employee No. 1 then said, "You can't," meaning Cunningham should not be printing the document using School Department equipment.  (Ex. C at p 47 ¶ 95)

47.    Cunningham then stated, "You're right, I will get them printed at Staples." (Ex. C at p 48 ¶ 95)

48.    Cunningham admitted that the flyer was on her work computer hard drive and that she showed it to the coworker, but Cunningham refused to disclose who helped her create it.  Cunningham acknowledged that Employee No. 1 told her not to print it using the school's printer.  Cunningham stated she took responsibility for printing it. (Ex. C at p 48 ¶ 96)

49.    When asked about the comment in the flyer about Plaintiff having her record sealed, Cunningham stated, "It's information on the internet. I saw info on the internet. I don't know if it's true."  The investigator noted that he looked online for any information referencing Plaintiff being involved in the Atlanta teacher cheating scandal and could not find any such information.  (Ex. C at p 48 ¶ 96)

50.    When asked about the comment in the flyer about Plaintiff being "chased out of Springfield for unethical behaviors," Cunningham was unwilling to identify the source of the information. (Ex. C at p 48 ¶ 96)

51.    Cunningham acknowledged that she suggested to the individual(s) who helped her create the flyer that the red highlighted language be added to the flyer, including

"Unethical behaviors?" and "Investigate these Individuals!" (Ex. C at p 48 ¶ 97; Ex.

C - p.45 Defamatory Flyer redacted version)

### Negligent Infliction of Emotional Distress

52.   Defendants had a duty of care to ensure the accuracy of information published,

republished or allowed to be published regarding alleged criminal acts or

professional misconduct committed by Plaintiff.

53.   Defendants Cunningham and Slaughter breached their duty to ensure the

accuracy of information published regarding Plaintiff's purported history of

criminality and professional misconduct.

54.   Plaintiff was the primary victim of Cunningham's and Slaughter's negligent

conduct.

55.   Plaintiff reputation was damaged as a result of Defendants' breach of their

duty of care.

### V.   CAUSES OF ACTION

### COUNT ONE
### DEFAMATION AGAINST
### DOREEN CUNNINGHAM

56.   Plaintiff incorporates by reference as if fully stated herein, the above

Paragraphs.

57.   Doreen Cunningham can be held liable for defamation, wrongful or negligent

acts committed within the scope of her employment. Cunningham created the

defamatory flyer during work hours, for work-related purposes, on her work computer, and asked a coworker employed by ARPS to review and print the defamatory statements.

58. The defamatory flyer created and disseminated by Cunningham constitutes a communication made in such a way as to unnecessarily, unreasonably, or excessively publish it to others, as to whom the occasion is not privileged, and with actual malice.

59. Doreen Cunningham acted negligently in failing to ascertain whether the statements were true or false before publishing them, despite admitting to Investigator Mitnick that "I don't know if it's true."  In failing to publicly retract the false claims of criminality, she allowed the false statements to remain published and uncontroverted on Defendants' website over 53 days.

60. Defendants' defamatory statements falsely claimed that Plaintiff committed a crime, which is defamation *per se*. The defamatory statements constitute libel and prejudiced the Plaintiff's professional reputation as a licensed educator.


**COUNT TWO**
**DEFAMATION AGAINST**
**DOUGLAS SLAUGHTER**


61. Plaintiff incorporates by reference as if fully stated herein, the above Paragraphs.

62.    Douglas Slaughter caused a written investigative report containing the defamatory flyer to be republished on ARPS' website, in a form that redacted the names of all persons appearing on the flyer except for Plaintiff's.  ARPS' website prominently displayed the defamatory statements for nearly two months.

63.    Despite Plaintiff's repeated request that Superintendent Douglas Slaughter remove the defamatory information or redact from its website, Slaughter refused to do so, causing the unredacted defamatory statement to remain on ARPS' website for an additional 53 days. While the defamatory flyer was eventually replaced with a redacted version, the extreme delay in doing so caused the false and defamatory information to remain accessible to the public for nearly two months.

64.    In failing to remove or redact the defamatory statement in a timely manner, Slaughter allowed the false statements to remain published and uncontroverted on Defendants' website for nearly two months.

65.    Douglas Slaughter republished false and defamatory statements regarding Plaintiff to third parties and the general public that he knew were false, or acted in reckless disregard as to whether the statement was true or false.

66.    Douglas Slaughter can be held liable for defamation, wrongful or negligent acts committed within the scope of his employment.

67.    The false communications were made in such a way as to unnecessarily, unreasonably, or excessively publish it to others, as to whom the occasion is not privileged and/ or with actual malice.

68.    The defamatory statements falsely claimed that Plaintiff committed a crime, which is defamation *per se*. The defamatory statements constitute libel and prejudiced the plaintiff's professional reputation as a licensed educator.

**COUNT THREE**
**RETALIATORY HARASSMENT AGAINST**
**AMHERST PELHAM REGIONAL PUBLIC SCHOOLS**
**(Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-3(a))**

69.    Plaintiff incorporates by reference as if fully stated herein, the above Paragraphs.

70.    Defendant Amherst Pelham Regional Public Schools subjected Plaintiff to adverse actions because she engaged in protected activity under Title VII of the Civil Rights Act of 1964.

71.    Title VII protects employees who engage in the protected activities of complaining about or opposing discrimination from adverse actions which could reasonably dissuade an employee from engaging in protected activity.

72.    The adverse actions include, but are not limited to: posting defamatory flyers about Plaintiff, publishing defamatory and confidential information about Plaintiff on

Defendants' website, refusing to remove the defamatory information from their website for nearly two months and terminating Plaintiff employment.

73.    The adverse actions were sufficient to dissuade a reasonable person from complaining about or opposing discrimination in Defendants' workplace.

74.    ARPS subjected Plaintiff to a pattern and practice of discriminatory and retaliatory conduct by supervisory-level employees, shortly following her complaints regarding discrimination, which could reasonably dissuade employees from complaining in the future.


**COUNT FOUR**
**RETALIATORY HARASSMENT AGAINST**
**AMHERST PELHAM REGIONAL PUBLIC SCHOOLS**
**(Mass. Gen. Laws  c.151B.)**

75.    Plaintiff incorporates by reference as if fully stated herein, the above Paragraphs.

76.    Defendant Amherst Pelham Regional Public Schools subjected Plaintiff to adverse actions because she engaged in protected activity under Mass. Gen. Laws c.151B.

77.    Mass. Gen. Laws c.151B  prohibits "any person" (not merely a supervisor or employer) from taking adverse action against a person "because he has opposed any practices forbidden under [Chapter 151B] or because he has filed a complaint, testified or assisted in any proceeding under [Chapter 151B]." [M.G.L. Ch. 151B,

Sect. 4(4)] Nor may "any person …coerce, intimidate, threaten or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by this chapter." M.G.L. c. 151B, Sect. 4(4A).

78.    Plaintiff engaged in the protected activities of complaining about or opposing discrimination and was subsequently subjected to adverse actions, which could reasonably dissuade an employee from engaging in protected activity.

79.    The adverse actions include, but are not limited to: posting defamatory flyers about Plaintiff, publishing defamatory and confidential information about Plaintiff on Defendants' website, refusing to remove the defamatory information from their website for nearly two months and terminating Plaintiff employment.

80.    The adverse actions were sufficient to dissuade a reasonable person from complaining about or opposing discrimination in Defendants' workplace.

## COUNT FIVE
## RETALIATORY HARASSMENT AGAINST
## AMHERST PELHAM REGIONAL PUBLIC SCHOOLS
### (Mass. Gen. Laws ch. 150E)

81.    Plaintiff incorporates by reference as if fully stated herein, the above Paragraphs.

82.    Mass. Gen. Laws ch. 150E, § 10(a)(3). Section 10(a)(1) prohibits public employers from interfering, restraining, or coercing "any employee in the exercise of any right guaranteed under [Chapter 150E.]" Mass. Gen. Laws ch. 150E, § 10(a)(1).

83.    Plaintiff engaged in the protected activities of complaining about and opposing discriminatory practices which violate the nondiscrimiantion clauses of ARPS' collective bargaining agreements, and was subsequently subjected Plaintiff to adverse actions which could reasonably dissuade an employee from engaging in protected activity.

84.    The adverse actions include, but are not limited to: posting defamatory flyers about Plaintiff, publishing defamatory and confidential information about Plaintiff on Defendants' website, refusing to remove the defamatory information from their website for nearly two months and terminating Plaintiff employment.

85.    The adverse actions were sufficient to dissuade a reasonable person from complaining about or opposing discrimination in Defendants' workplace.

**COUNT SIX**
**RETALIATION HARASSMENT AGAINST**
**AMHERST PELHAM REGIONAL PUBLIC SCHOOLS**
**(U.S.C.A Const. Amend. 1 and Section 1983)**

86.    Plaintiff incorporates by reference as if fully stated herein, the above Paragraphs.

87.    The First Amendment protects employees from retaliation by government entities when employees have engaged in speech that is a matter of public concern.

88.    Plaintiff's speech as a citizen on matters of public concern and pro-union activity were substantial or motivating factors in the adverse actions ARPS took against Plaintiff.

89.    ARPS subjected Plaintiff to adverse actions because she engaged in the protected speech of complaining about and opposing discriminatory practices.  The adverse actions include, but are not limited to: posting defamatory flyers about Plaintiff, publishing defamatory and confidential information about Plaintiff on Defendants' website, refusing to remove the defamatory information from their website for nearly two months and terminating Plaintiff employment.

90.    The adverse action taken against Plaintiff occurred under color of law and resulted in the deprivation of  Plaintiff's constitutional right and federal statutory right.

**COUNT SEVEN**
**RETALIATORY HARASSMENT AGAINST**
**DOREEN CUNNINGHAM AND DOUGLAS SLAUGHTER**
**AND MICHAEL MORRIS**
**(Mass. Gen. Laws ch. 151B )**

91.    Plaintiff incorporates by reference as if fully stated herein, the above Paragraphs.

92.    Defendants Doreen Cunningham, Michael Morris and Douglass Slaughter subjected Plaintiff to adverse actions because she engaged in protected activity under c.151B.

**COUNT EIGHT**
**RETALIATORY HARASSMENT AGAINST**
**DOREEN CUNNINGHAM AND DOUGLAS SLAUGHTER**
**AND MICHAEL MORRIS**
**(Mass. Gen. Laws c.150E)**

93.    Plaintiff incorporates by reference as if fully stated herein, the above Paragraphs.

94.    Defendants Doreen Cunningham, Michael Morris and Douglass Slaughter subjected Plaintiff to adverse actions because she engaged in protected activity under c.150E.

## COUNT NINE
## RETALIATORY HARASSMENT AGAINST
## DOREEN CUNNINGHAM AND DOUGLAS SLAUGHTER
## AND MICHAEL MORRIS
## (First Amendment)

95.    Plaintiff incorporates by reference as if fully stated herein, the above Paragraphs.

96.    Defendants Doreen Cunningham, Michael Morris and Douglass Slaughter were government actors or acted in concert with government actors to subject Plaintiff to adverse actions because of her protected speech.

97.    Plaintiff's speech as a citizen on matters of public concern and pro-union activity were substantial or motivating factors in the adverse action against the plaintiff.

98.    The adverse action taken against Plaintiff occurred under color of law and resulted in the deprivation of Plaintiff's constitutional right and federal statutory right.

**COUNT TEN**
**RETALIATORY HARASSMENT AGAINST**
**DOREEN CUNNINGHAM AND DOUGLAS SLAUGHTER**
**AND MICHAEL MORRIS**
**(Mass. Gen. Laws ch. 151B )**

99.   Plaintiff incorporates by reference as if fully stated herein, the above Paragraphs.

100.  Chapter 151B, allows for individual liability for harassment and other unlawful practices by employers.

101.  Michael Morris, Doreen Cunningham, and Douglass Slaughter subjected Plaintiff to a pattern and practice of discriminatory and retaliatory conduct by supervisory-level employees shortly following her complaints regarding discrimination, which could reasonably dissuade employees from complaining in the future.

102.  Morris, Cunningham, and Slaughter, individually and through various employees, supervisors and agents of its school district, retaliated against Plaintiff for her protected activities. Defendant subjected Plaintiff to a steady barrage of adverse actions that would dissuade a reasonable employee from complaining about discrimination in the future.

103.   There is a close temporal proximity between Plaintiff's protected activity and Defendants adverse actions, supporting a causal connection for her retaliation claims.

104.  The pervasive and blatantly retaliatory conduct constitutes the kind of dissuasive actions expressly prohibited by the anti-retaliation provisions 151B and ARPS' Non-Retaliation policy.

### COUNT ELEVEN
### PRIVACY ACT VIOLATIONS AGAINST
### DOREEN CUNNINGHAM AND DOUGLAS SLAUGHTER
### (G.L. c. 214, § 1B)

105.  Plaintiff incorporates by reference as if fully stated herein, the above paragraphs.

106.  Doreen Cunningham and Douglass Slaughter caused a second defamatory statement to be read allowed at the School Committee meeting, which disclosed Plaintiff private personnel information regarding her participation in a Principal search at an ARPS middle school.

107.   In an attempt to retaliate against Plaintiff for her protected activity of opposing discrimination, Cunningham accused Plaintiff of being a "woman scorned" because she was not selected for a middle school Principal position in the ARPS public school system.  Douglass Slaughter permissively endorsed the conduct at issue by allowing Cunningham's statements to be read at a publicly broadcasted meeting and subsequently republished on ARPS' public website.

108.  M.G.L. c. 214, § 1B  states that "A person shall have a right against unreasonable, substantial or serious interference with his privacy."

109.   Cunningham and Slaughter seriously interfered with Plaintiff' right to privacy by publishing and discussing in public forums Plaintiff's confidential personnel records, application and evaluative scoring for a Principal position.

110.   Defendants' own records reflect that Doreen Cunningham signed a confidentiality agreement, pledging not to publicly disclose any information related to Plaintiff's candidacy for the principal position.   (See Ex B - Confidentiality Agreement).

111.   In violation of the agreement, Cunningham disclosed Plaintiff's confidential personnel information in a malicious attempt to embarrass and discredit Plaintiff's advocacy against discriminatory practices in the ARPS school system.

112.   Defendants' unauthorized disclosures were unreasonable and substantially interfered with Plaintiff's privacy rights.


**TWELVE**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**AGAINST DOREEN CUNNINGHAM, MICHAEL MORRIS,**
**AND DOUGLAS SLAUGHTER**

113.   Plaintiff incorporates by reference as if fully stated herein, the above paragraphs.

114.   Slaughter, Cunningham and Morris failed to use reasonable care under the circumstances to safeguard Plaintiff's privacy and to confirm the accuracy of the salacious information presented before publishing and republishing the information.

115.   Slaughter, Cunningham and Morris failed to follow ARPS policy regarding bullying and harassment, which exposed Plaintiff to egregious and unnecessary harassment by Defendants' employees. Defendants never investigated several employees who assisted Cunningham in the distribution of the defamatory flyers, nor were they ever held to account for their harassing conduct.

116.   Plaintiff suffered emotional distress because of Defendant negligent act and omissions, and a reasonable person would have suffered emotional distress under similar circumstances.

### COUNT THIRTEEN
### BREACH OF CONTRACT AGAINST
### AMHERST PELHAM REGIONAL PUBLIC SCHOOLS
### AND DOREEN CUNNINGHAM

117.   Plaintiff incorporates by reference as if fully stated herein, the above paragraphs.

118.   The confidentiality agreement Cunningham signed was a contract intended to benefit Plaintiff and all other candidates involved in the application process for the Principal position, as third party beneficiaries. (See Ex B - Confidentiality Agreement)

119.   As an intended third party beneficiary, Plaintiff had a reasonable expectation of privacy regarding her candidacy, as well as standing to seek a remedy for

Defendants' breach of the confidentiality agreement.  Plaintiff relied on the terms of the agreement to protect her privacy interest in the applicant screening process.

120.   Cunningham, an employee and agent of ARPS, is presumed to have read and understood the terms of the agreement, and accepted its terms when she signed the agreement.  She breached agreement when she failed to adhere to its terms.

121.   Cunningham and ARPS' discriminatory, defamatory, harassing, negligent, contract breaching and retaliatory conduct resulted in damage to Plaintiff's reputation, loss of employment opportunities, anxiety, fear, insomnia, extreme stress, and depression from a toxic work environment, and subsequently deterioration of the Plaintiff's mental health to the extent she was forced to take medical leave.  The Plaintiff is currently under treatment to manage the trauma caused by the Defendant.


**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays that process is issued according to law and demands judgment against Defendants as follows:

      a. All damages that may be awarded under the Title VII, including lost wages and back pay; general compensatory damages for retaliation including but not limited to damages for mental anguish and emotional distress; and liquidated damages;

b. All damages that may be awarded under M.G.L. 151B for discrimination and retaliation provided for under Massachusetts law;

c. All damages that may be awarded for defamation, negligence and contract claims under Massachusetts law;

d. Special damages to the extent allowed by law;

e. Injunctive relief under Title VII preventing and prohibiting Defendants from engaging in their present practices in violation of the laws cited herein; as well as damages under Title VII for lost wages based on retaliatory conduct;

f. Reasonable attorney's fees and expenses and costs pursuant to 42 U.S.C. § 1988;

g. Such other and further and different relief as this court deems just and appropriate.

Respectfully submitted, the 5th day of April  2024.


/S/ Arnold J. Lizana
Law Offices of Arnold J. Lizana III
MA BBO No. 546161
1175 Peachtree Street NE, 10th Floor
Atlanta, GA 30361
T: (404) 207-1559
F: (470) 231-0672
alizana@attorneylizana.com

**ATTORNEY FOR PLAINTIFF**