IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
SPRINGFIELD DIVISION

| | |
|---|---|
| LAMIKCO TWANET MAGEE,<br><br>    Plaintiff,<br><br>v.<br><br>AMHERST-PELHAM REGIONAL PUBLIC SCHOOLS and individually MICHAEL MORRIS,<br>and DOREEN CUNNINGHAM, and DOUGLAS SLAUGHTER,<br><br>    Defendants. | Civil Action No.:<br><br>3:24-cv-30049-MGM<br><br><u>Jury Trial Demanded</u> |

**PLAINTIFF'S MEMORANDUM OPPOSING DEFENDANT DOREEN CUNNINGHAM'S MOTION TO DISMISS**

Defendant Doreen Cunningham published a flyer baselessly accusing Plaintiff Lamikco Magee of various criminal and professional misconduct. Then Cunningham breached a nondisclosure agreement by telling thousands of people that Magee had applied for and been rejected for a vacant position as principal at the local middle school. After Magee sued Cunningham on a handful of claims, Cunningham filed a motion under Massachusetts' anti-SLAPP statute and Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss two of them: the one for defamation from the flyer and the one for breach of the nondisclosure agreement. *See* ECF 19 & 20.

The Court should deny Cunningham's motion. The anti-SLAPP statute does not authorize dismissal of Magee's breach-of-contract claim because the statute only protects petitioning activity, and only then when the petitioning activity is the sole basis for the plaintiff's claim.

1

Cunningham was not engaged in petitioning activity when she disclosed that Magee had been turned down for the principal position, and it is the contract Cunningham signed and breached, not her purported petitioning, that is the primary basis for Magee's breach-of-contract claim. Rule 12(b)(6) likewise does not authorize dismissal of Magee's breach-of-contract claim because Magee has properly pleaded injury from Cunningham's violation of the nondisclosure agreement and Cunningham cannot show, as a matter of law, that Magee's claimed injuries are not compensable.

The anti-SLAPP statute also does not authorize dismissal of Magee's defamation claim because it does not shield petitioning activity, like Cunningham's, that lacks a reasonable basis in fact and that causes the plaintiff actual injury. And because Cunningham does not adequately develop her federal and state constitutional arguments for dismissing the defamation claim under Rule 12(b)(6), her attempt to dismiss the claim on that basis also fails.

This action is not the type of abusive or transparently groundless litigation the anti-SLAPP statute and Rule 12(b)(6) are meant to guard against. The case should proceed to discovery.

## BACKGROUND

There is very little dispute about the relevant facts here because, for purposes of her motion, Cunningham "accepts as true the facts … set forth in [Magee's] Second Amended Complaint." ECF 20 at 2. Those facts are as follows.

Between 2022 and late 2023, Cunningham worked as assistant superintendent and human resources director at Amherst-Pelham Regional Public Schools ("ARPS"), where Magee was a teacher. ECF 18, ¶¶ 5 & 9. Magee also headed the teacher's union at ARPS during that period. *Id.* ¶ 21.

In early 2023, ARPS posted a job opening to serve as principal at Amherst Regional Middle School. *Id.* ¶ 35. Magee applied. *Id.* To ensure applicants would not suffer embarrassment if they were denied the position, applicants were promised that no one involved in the vetting process would publicly divulge the applicants' identities. *Id.* ¶¶ 44-45. In furtherance of that commitment, members of the search and hiring committee were required to sign a nondisclosure agreement stipulating that they would not publicly divulge the names of any of the applicants. *Id.* ¶¶ 44-45, 153. Cunningham was among those who signed the nondisclosure agreement. *Id.* ¶ 154.

While the principal search was underway, the ARPS teachers union grew increasingly upset with Cunningham. Their frustration ultimately led membership to call for a vote of no confidence against Cunningham. *Id.* ¶ 24. The vote occurred on May 13, 2023, with a majority of union members voting against Cunningham. *Id.*

Just a few days later, on May 16, 2023, ARPS's School Committee convened a meeting (the "Meeting").[1] In her motion, Cunningham suggests that the Meeting arose from or was related to the vote of no confidence against her. ECF 20 at 7. The complaint, however, does not say that—or anything else about the purpose of the Meeting—and does not identify any connection between the Meeting and the no-confidence vote against Cunningham. The agenda for the Meeting likewise does not disclose any connection between the Meeting and the no-confidence vote against Cunningham.[2] On the contrary, the only substantive item on the

---

[1] A recording of the Meeting is publicly available on Amherst Media's YouTube channel. *See* Amherst Regional School Committee: May 16, 2023, (last visited Sept. 4, 2024). Magee agrees with Cunningham, for purposes of this opposition, that the Court may take judicial notice of the recording's contents.

[2] The agenda for the Meeting is publicly available online. *See* Agenda for Emergency Meeting: Joint Meeting of the Amherst-Pelham Regional School & Union 26 School Committees, (last visited Sept. 4, 2024).

agenda is appointment of a temporary superintendent.[3] And an independent investigative report, commissioned by ARPS, shows that the Meeting was called "in response to the allegations of inappropriate and offensive behavior toward students reported in" a recent news report. ECF 18-3 at 4, ¶ 90.

Before the Meeting, Cunningham—working in concert with a number of other ARPS staff members—prepared a flyer attacking Magee and two other ARPS teachers. ECF 18 ¶¶ 60-72.[4] The flyer falsely accused Magee of having been involved in the "Atlanta teacher cheating scandal," having a criminal record, attempting to hide her criminal record, engaging in unethical behaviors at her prior employer, and attempting to coerce other union members to sign documents against Cunningham. ECF 18-3 at 5, ¶ 94.[5] All those accusations were false and unsupported and Cunningham knew it, but she made them anyway. ECF 18 ¶¶ 63 & 65. Cunningham also ensured that the flyer was distributed to the public before the Meeting by having her allies place copies of it on the windshields of cars parked outside the Meeting and by giving copies of it to attendees. *Id.* ¶ 71.

For the Meeting, Cunningham submitted a written statement (to be read publicly) defending her actions as assistant superintendent and attempting to refute public criticism of her performance in that role.[6] As part of that statement, Cunningham tried to paint Magee as "a woman scorned," announcing to everyone in attendance that Magee had applied for and been

---

[3] *Id.*

[4] A redacted copy of the flyer is already in the record. *See* ECF 18-3 at 3.

[5] The accusations against the two other teachers included that they were witches. *See* ECF 18-3 at 3-5.

[6] The full text of Cunningham's written statement is publicly available online via the ARPS Board's website. *See* [Amherst-Pelham Regional School Committee Public Comments-May 16, 2023](#), at 21-22,

rejected for the vacant principal position.[7] ECF 18 ¶ 42. In addition to the scores of people in attendance at the Meeting itself, video footage of Cunningham's statement was posted on Amherst Media's YouTube channel, where it has been viewed more than 4,200 times.[8]

On April 5, 2024, Magee filed a 13-count complaint against Cunningham, ARPS, and two former ARPS superintendents. ECF 1. The counts against Cunningham included claims for defamation, First Amendment retaliation, retaliatory harassment in violation of Massachusetts law, violations of Massachusetts' Privacy Act, negligent infliction of emotional distress, and breach of contract. *See id.* After extensive discussions with defense counsel under Local Rule 7.1, however, Magee amended her complaint to remove five of the 13 counts, including the retaliatory harassment, NEID, and Privacy Act claims against Cunningham. *See* ECF 13 & 18. Magee's aim in doing so was to streamline her complaint and leave only the strongest claims, even though that meant dropping colorable claims against Cunningham and the other defendants. *See* ECF 13 at 3-4.

On August 15, 2024, Cunningham filed a motion to dismiss the contract and defamation claims against her. ECF 19 & 20. Cunningham's motion sought dismissal of those claims under Massachusetts' anti-SLAPP statute and under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See id.* Cunningham's motion expressly stipulated to the allegations in the Magee's second amended complaint. ECF 20 at 2. The only attachment to the motion was a May 13, 2023 from the ARPS teachers union to the Amherst Regional School Committee expressing a loss of confidence in Cunningham and Defendant Michael Morris. *See* ECF 20-1.

---

[7] *Id.*

[8] *See* [Amherst Media, Amherst Regional School Committee: May 16, 2023](#), (last visited Sept. 4, 2024).

**LEGAL FRAMEWORK**

Massachusetts' anti-SLAPP statute is codified at G.L. c. 231, § 59H. Special motions to dismiss under the anti-SLAPP statute are analyzed under a two-stage framework. Under the first stage, the movant "must show that the challenged count has no substantial basis in conduct other than or in addition to the [movant's] alleged petitioning activity. If the proponent cannot make the requisite threshold showing, the special motion to dismiss is denied." *Bristol Asphalt, Co. v. Rochester Bituminous Prods., Inc.*, 493 Mass. 539, 555-56 (2024). If the movant makes her threshold showing, the opposing party the motion may still defeat the motion at the framework's second stage by showing that the movant's exercise of her right of petition (1) "was devoid of any reasonable factual support or any arguable basis in law," and (2) "caused actual injury to" the party opposing the motion. *Id.* at 557. Because the anti-SLAPP statute is such "strong medicine," courts give it a "narrow and strict construction," in order that the statute not operate to infringe the plaintiff's own petitioning activity in bringing a lawsuit. *Id.* at 555.

Motions to dismiss under Rule 12(b)(6) are subject to an even more permissive standard. The plaintiff need only "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard is "not a probability requirement"; it simply "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether a plaintiff has met this low burden, moreover, the court must accept factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Rederford v. U.S. Airways, Inc.*, 589 F.3d 30, 34-35 (1st Cir. 2009).

**ARGUMENT**

Cunningham's motion should be denied in its entirety. The anti-SLAPP statute doesn't bar Magee's claims because (1) the breach-of-contract claim is not based solely on petitioning activity and (2) the defamatory flyer lacked a reasonable factual foundation and caused Magee actual damage. Rule 12(b)(6) also doesn't bar Magee's claims because (1) Magee adequately pleaded damages from Cunningham's breach of the nondisclosure agreement, and (2) Cunningham has forfeited whatever constitutional arguments she believes might justify dismissal of Magee's defamation claim.

**I.    Magee's Breach-Of-Contract Claim Should Not Be Dismissed.**

There is no basis for dismissing Magee's breach-of-contract claim under either the anti-SLAPP statute or Rule 12(b)(6). The anti-SLAPP statute only forecloses claims that are based *solely* on the movant's *petitioning activity*. When Cunningham breached her nondisclosure agreement by revealing to thousands of people that Magee had been rejected for the vacant principal position, she was not petitioning within the meaning of the Statute. Even if she had been, the anti-SLAPP statute still would not authorize dismissing the contract claim, as that claim is not based solely on Cunningham's alleged petitioning activity, but rather on the existence and breach of a confidentiality agreement. Rule 12(b)(6) likewise does not authorize dismissing the contract claim because Magee has adequately pleaded damages from Cunningham's breach of the nondisclosure agreement and Cunningham cannot show, as a matter of law, that Magee suffered no harm from that breach.

    **A.    Cunningham's statement at the Meeting was not petitioning activity within the meaning of the anti-SLAPP statute.**

Under the anti-SLAPP statute, to win dismissal of Magee's contract claim, Cunningham must show that the claim is based solely on her petitioning activity, with no "substantial basis

other than or in addition to the petitioning activities implicated." *Duracraft Corp. v. Holmes Prods. Corp.*, 427 Mass. 156, 167 (1998); *see also Columbia Plaza Assocs. v. Northeastern Univ.*, 493 Mass. 570, 576-77 (2024) (quoting *Duracraft*). A statement constitutes petitioning activity only if the speaker (1) speaks as a private citizen, rather than as a government official; and (2) affirmatively seeks redress from the government. *See Moriarty v. Mayor of Holyoke*, 71 Mass. App. Ct. 442, 447 (2008) (private citizen); *Fustolo v. Hollander*, 455 Mass. 861, 866 (2010) (seeks redress). Cunningham's statement at the Meeting—disclosing that Magee had applied for and been rejected for the vacant principal position—was not petitioning activity because Cunningham spoke in her official capacity and did not seek redress from the Committee.

1. **Cunningham spoke in her official capacity.**

Because the right of petition "is understood as the right of *citizens* to seek redress *from the government* for grievances … the government cannot 'petition' itself within the meaning of [the Statute]." *Moriarty*, 71 Mass. App. Ct. at 448. In other words, for purposes of the anti-SLAPP statute, "petitioning activity" does not include "statements made to the press or other municipal bodies by [municipal] agents acting in their official capacities." *Id.* at 447.[9]

Cunningham's written remarks at the Meeting establish that she spoke in her official capacity when she disclosed that Magee had been rejected for the principal position.[10] Cunningham's remarks defend her and ARPS's official hiring decisions, refer to ARPS's

---

[9] *See also, e.g.*, *Dowgiewicz v. Town of Webster*, No. 19-cv-11131-RGS, 2019 WL 5191801, at *2 (Oct. 15, 2019) (anti-SLAPP motion proper "only to the extent that [defendants'] 'petitioning' was … not done in their official capacities as agents of the Town."); *Ryan v. City of Malden*, 91 Mass App. Ct. 1132, at *2 (July 19, 2017) (unpublished disposition) ("the anti-SLAPP statute does not protect individuals acting in their official capacities on behalf of municipal bodies").

[10] Cunningham's remarks are publicly accessible at the ARPS School Board's website. *See* Amherst-Pelham Regional School Committee Public Comments-May 16, 2023, at 21-22

practices as "Our practices," and describe internal, official deliberations.[11] Cunningham even signed the statement in her official capacity, writing "From Doreen Cunningham, Asst. Superintendent and HR Director, ARPS."[12]

That is not the testimony or sign-off of someone speaking as a private citizen. Rather, Cunningham's written statement reflects the reality that she was functioning as a witness, testifying in her official capacity on ARPS's behalf to answer public criticisms of her and ARPS's official acts. And a government official's testimony about her performance of her official functions is not petitioning activity within the meaning of the anti-SLAPP statute. *See, e.g.*, *Kobrin v. Gastfriend*, 443 Mass. 327, 330 (2005) (denying anti-SLAPP motion because government witness's testimony was not petitioning activity); *Fisher v. Lint*, 69 Mass. App. Ct. 360, 365 (2007) (denying anti-SLAPP motion because investigating officer's report to internal affairs concerning his performance of assigned function was not petitioning activity).

Cunningham might argue that she had some personal interest in defending her official record, such as an interest in keeping her job, maintaining her salary, or salvaging her professional reputation. Under the anti-SLAPP statute, however, "the motive behind the petitioning activity is irrelevant." *Fisher*, 69 Mass. App. Ct. at 365 (quoting *Office One, Inc. v. Lopez*, 437 Mass. 113, 122 (2002)).[13] What matters is that, as Cunningham herself acknowledged, she spoke as ARPS's assistant superintendent and human resources director, not as a private citizen. For that reason, she has not carried her burden at the first stage of the

---

[11] *Id.*

[12] *Id.*

[13] *See also, e.g.*, *Dowgiewicz v. Town of Webster*, No. 19-cv-11131-RGS, 2019 WL 5191801, at *2 (Oct. 15, 2019) (rejecting argument that speaker's personal motives in making statements mattered for purposes of deciding whether statements constituted protected petitioning activity).

anti-SLAPP framework and her special motion to dismiss Magee's contract claim should be denied.

### 2. Cunningham did not seek redress from the Committee.

Petitioning activity also requires that the purported petitioner be seeking government redress for a grievance of some kind. *See Fustolo*, 455 Mass. at 867. For that reason, the hallmark of petitioning activity is "supplication to higher authority." *Garabedian v. Westland*, 59 Mass. App. Ct. 427, 433 (2003). Just making statements to a government body—particularly one lacking the power to take the requested action—is not enough to render the statements petitioning activity. *E.g.*, *Kobrin*, 443 Mass. at 330 (witness testimony to adjudicative body was not petitioning activity).[14]

Cunningham never asked the Committee to redress any grievance or take any action in response to her written statement. She simply took advantage of the platform afforded by an open meeting to publicly respond to criticisms of her official performance, and to publicly refuse the teachers union's demand that she resign. The absence of any request for official action, or even any attempt to reach a government body (as opposed to the assembled public), distinguishes this case from every case in which Massachusetts courts have found statements to constitute petitioning activity. *See Rosario v. Caring Bees Healthcare, Inc.*, 102 Mass. App. Ct. 1115, at *3 (Apr. 5, 2023) (unpublished disposition) ("Rosario has not cited, and we have not found, any

---

[14] In assessing whether a statement to a government entity is "petitioning activity," courts consider whether the government entity had the power to do anything to respond to the statement. See North Am. Expositions Co. v. Corcoran, 452 Mass. 852, 863 (2009). The Committee lacked authority to make personnel decisions regarding Cunningham. See G.L. c. 71, § 59 (setting out Committee's heavily circumscribed personnel powers). Indeed, its own policy manual states that the "Committee has no power to rule on an employee's grievance." (See ARPS Policy BEC: School Committee Executive Session December 7, 2011) The fact that the Committee could not even grant Cunningham any redress, even if she had asked for it, is further evidence that her statements at the Meeting were not petitioning activity covered by the anti-SLAPP statute.

10

appellate decisions where statements lacking a 'supplication to higher authority,' or efforts to at least 'reach governmental bodies,' qualify as petitioning activity under [the anti-SLAPP statute].").

Because Cunningham's remarks at the Meeting did not seek redress for any grievance, they were not petitioning activity within the meaning of the anti-SLAPP statute. That is an independently sufficient reason to deny Cunningham's anti-SLAPP motion to dismiss Magee's breach-of-contract claim.

### B. Section 59H does not apply to contract claims like Magee's.

There is another reason to deny Cunningham's anti-SLAPP motion to dismiss Magee's contract claim: The claim is not based *solely* on Cunningham's petitioning activity, meaning the anti-SLAPP statute does not apply.

At the first stage of the anti-SLAPP framework, the movant "has a threshold burden to show that the challenged claim is based solely on the [movant's] exercise of its right to petition, with no 'substantial basis other than or in addition to the petitioning activities implicated.'" *Columbia Plaza*, 493 Mass. at 576-77 (quoting *Duracraft*, 427 Mass. at 167). Courts take a "narrow construction" of what it means for a claim to be "based on" petitioning activity, so that, if the claim is substantially based on *anything* besides the movant's petitioning activity, the motion must be denied. *Bristol Asphalt*, 493 Mass. at 555.

Cunningham cannot carry her burden at the first stage of the anti-SLAPP framework because her statements at the Meeting are not the sole factual basis for Magee's contract claim. Instead, the claim is based on the existence and breach of an agreement between ARPS and Cunningham, to which Magee was a third-party beneficiary. ECF 18 ¶¶ 152-59. In other words, the alleged conduct giving rise to Magee's contract claim is Cunningham's decision to enter into a nondisclosure agreement for Magee's benefit, and then act in violation of Magee's rights under

11

that agreement. That is not conduct covered by the anti-SLAPP statute. *See Columbia Plaza*, 493 Mass. at 576-77.

The Supreme Judicial Court's decisions in the *Columbia Plaza* and *Duracraft* cases show that the anti-SLAPP statute does not apply to contract claims like Magee's. The *Columbia Plaza* litigation arose out of the defendant's petitioning the Boston Planning and Development Administration for permission to develop some land. *Id.* at 572-76. When the plaintiff sued, alleging that the defendant's petition amounted to a breach of the parties' joint venture agreement, the defendant moved to dismiss the plaintiff's contract claim under the anti-SLAPP statute. *Id.* at 576. The SJC affirmed the denial of the motion on the ground that the plaintiff's contract claim was "based on" the parties' joint venture agreement, not solely on the defendant's exercise of its right to petition. *Id.* at 578-79. As the Court explained:

> the alleged factual basis for most of [the plaintiff's] claims was not solely [the defendant's] petitioning of the BDPA, but the existence of contractual agreements between the parties. That is, the alleged conduct that gave rise to [the plaintiff's] claims sounding in contract was [the defendant's] decision to enter into agreements with [the plaintiff], and then act in violation of [the plaintiff's] rights under those agreements. *See Duracraft Corp.*, 427 Mass. at 165, 691 N.E.2d 935 ("Many preexisting legal relationships may properly limit a party's right to petition, including enforceable contracts in which parties waive rights to otherwise legitimate petitioning.").

*Id.* The *Columbia Plaza* decision shows that the anti-SLAPP statute does not bar breach-of-contract claims merely because the alleged breach was accomplished through petitioning activity.

*Duracraft* parallels this case even more closely. That case involved deposition testimony in a Trademark Trial and Appeal Board adjudication. 427 Mass. at 157-58. The plaintiff sued the testifying witness—the plaintiff's former employee—for breaching a nondisclosure agreement, prompting the witness and his new employer to move to dismiss the contract claim under the anti-SLAPP statute. *Id.* at 159. The SJC affirmed the denial of the motion, holding that the

anti-SLAPP statute did not cover the plaintiff's breach-of-contract claim because the nondisclosure agreement constituted a substantial basis other than the employee's petitioning activity to support the claim. *Id.* at 168. The *Duracraft* decision shows that breach of a nondisclosure agreement, even in the course of petitioning, is not covered by the anti-SLAPP statute.

*Columbia Plaza* and *Duracraft* dictate the result here. Just as the nondisclosure agreement in *Duracraft* constituted a non-petitioning basis to support the plaintiff's contract claim, the nondisclosure agreement Cunningham signed constitutes a non-petitioning basis to support Magee's contract claim. The fact that Cunningham happened to breach the agreement while speaking at a School Committee meeting does not preclude Magee from seeking damages for the breach, given the commonsense rule that "[m]any preexisting legal relationships may properly limit a party's right to petition, including enforceable contracts in which parties waive rights to otherwise legitimate petitioning." *Id.* at 165. If the anti-SLAPP statute foreclosed contract claims like Magee's, it would impermissibly impinge on plaintiffs' constitutional rights of petition, *see id.* at 166-67, and *Duracraft* and *Columbia Plaza* would both have been decided differently.

Cunningham does not attempt to distinguish *Columbia Plaza* at all, and her only discussion of *Duracraft* is an unsupported assertion that *Duracraft* is distinguishable because Cunningham never "waived any future petitioning rights." ECF 20 at 10. But, as *Duracraft* itself shows, a nondisclosure agreement *is* a waiver of petitioning rights—at least of the signer's right to petition in a way that violates the agreement.[15] By signing the agreement, Cunningham

---

[15] Indeed, if Cunningham's argument were correct, *Duracraft* would have come out the other way.

13

contracted away her right to publicly disclose the identity of the candidates for the principal position, regardless of forum.

Magee's breach-of-contract claim is based, not solely on Cunningham's supposed petitioning of the Committee, but on the existence of a contractual agreement to which Magee was a third-party beneficiary. The conduct giving rise to Magee's contract claims was Cunningham's decision to enter into that agreement and then act in violation of Magee's rights under it. Because the nondisclosure agreement constitutes a substantial basis for Magee's breach-of-contract claim apart from Cunningham's supposed petitioning activity, the anti-SLAPP statute does not authorize dismissal of that claim. That, too, is an independently sufficient reason for denying Cunningham's anti-SLAPP motion to dismiss Magee's breach-of-contract claim.

### C. Rule 12(b)(6) provides no basis for dismissing Magee's contract claim.

Cunningham also moves to dismiss Magee's contract claim under Rule 12(b)(6), asserting that Magee's "admission that the circumstances of [her] candidacy for the middle school position [were] known to third parties negates any claim for damages against Cunningham." *Id.* at 11. But there is no evidence that Magee's candidacy for the principal position was widely known, and Cunningham provides none.

Even assuming, moreover, that a handful of members of the Amherst community were aware of Magee's candidacy before Cunningham announced it to the world, that would not mean Magee suffered no harm when thousands of *other* people learned, from Cunningham, that Magee had been rejected for the principal position. Magee is unaware of any case law holding, as Cunningham urges, that a nondisclosure agreement is rendered effectively unenforceable as soon as any stranger to the agreement becomes aware of the information covered by the agreement.

Had Cunningham adhered to the contract, many members of the audience would have remained ignorant of the fact that Magee had been turned down for the principal job, which

would have spared Magee substantial humiliation, as set out in her complaint. *See, e.g.*, Dkt. 18 ¶ 153-56, 159; *see also See* Ex. 1, Decl. of Lamikco Magee, ¶ 8. The notion that, by broadcasting Magee's rejection to a large—indeed, a global—audience, Cunningham did nothing to harm Magee lacks a logical or legal foundation and cannot justify dismissal of Magee's contract claim under Rule 12(b)(6).

## II. Magee's Defamation Claim Should Not Be Dismissed.

Cunningham also moves to dismiss Magee's defamation claim under the anti-SLAPP statute and Rule 12(b)(6), but neither provision permits dismissal. As Magee's declaration and ARPS's own investigation show, the flyer was devoid of any reasonable factual support and Magee has suffered considerable financial, reputational, and psychological harm because of it, meaning the anti-SLAPP statute does not bar Magee's defamation claim. And Cunningham has forfeited her Rule 12(b)(6) argument for dismissing the claim by failing to meaningfully develop it.

### A. The anti-SLAPP statute does not foreclose Magee's defamation claim.

Even assuming the flyer qualifies as petitioning activity under the anti-SLAPP statute, Magee can defeat Cunningham's anti-SLAPP motion under the second stage of the anti-SLAPP framework. At that stage, the plaintiff bears the burden of showing, by a preponderance of the evidence, (1) that the defendant's petitioning activity was devoid of any reasonable factual support or any arguable basis in law, and (2) that the plaintiff suffered actual injury as a result of the defendant's alleged petitioning activity. *Bristol Asphalt*, 493 Mass. at 557. Magee's complaint (which Cunningham accepts as true for purposes of this motion), her declaration, and ARPS's independent investigation of the flyer readily carry that burden.

### 1. The flyer was devoid of any reasonable factual support.

Cunningham had no basis at all for publishing the statements in the flyer.

15

- She wrote that Magee was involved in the Atlanta teacher testing scandal, but Magee never even taught school in Atlanta. *See* Ex. 1, Decl. of Lamikco Magee, ¶ 3.

- She wrote that, Magee "had her record [involving the scandal] sealed," which is patently false because Magee was never charged in connection with the scandal and thus never had any need to seal a record. *Id.* ¶ 4.

- She wrote that Magee had been "chased out of [her prior teaching job] due to unethical behaviors," but Magee left that job voluntarily and was never so much as accused of unethical behavior while at that prior job. *Id.* ¶ 5.

- She wrote that Magee attempted to coerce other APEA members to sign documents against Cunningham, but Magee has never solicited signatures against Cunningham. *Id.* ¶ 6.

Unsurprisingly, given that the flyer's accusations are so obviously false, they lack any reasonable support. That is why, during her interview with ARPS's independent investigator, Cunningham was persistently unable or unwilling to specify any identifiable source for the flyer's accusations. She told the investigator that she saw information about Magee's supposed "sealed" criminal record "on the internet" but did not identify where on the internet she saw that information and then admitted she did not even know if the statement on the flyer was true. ECF 18-3 at 6, ¶ 96. When the investigator looked for such a statement online, moreover, he found nothing. *Id.* at 6 n.24. Cunningham also refused to identify for the investigator any source for the allegation about Magee being "chased out" of her prior teaching job.[16] *Id.* at 6, ¶ 96.

---

[16] The flyer also accused two ARPS employees of being witches. ECF 18-3 at 5, ¶ 94. When the ARPS investigator asked Cunningham about that, she "refuse[d] to give names" for her supposed sources, admitted she had never seen the employees practicing witchcraft, and simply declared that "[m]any people brought this" allegation, without ever specifying who. *Id.* at 6, ¶ 96.

16

The complaint also alleges that the flyer's accusations were entirely fabricated, and Cunningham has already stipulated to the accuracy of the complaint's factual allegations for purposes of her motion. *See, e.g.*, ECF 18, ¶ 107; ECF 20 at 2. In any event, Cunningham's anti-SLAPP motion never contends that the flyer's false and defamatory accusations were based on facts, and she has not submitted an affidavit or pleading suggesting otherwise. Accordingly, she has forfeited any argument that there was reasonable factual support for the flyer's accusations about Magee. *See Pignons S.A. de Mecanique v. Polaroid Corp.*, 701 F.2d 1, 3 (1st Cir. 1983) (argument raised for first time in reply brief or at oral argument on motion hearing is waived).

### 2. Magee has suffered actual harm because of the flyer.

The thrust of Cunningham's anti-SLAPP motion to dismiss Magee's defamation claim is that Magee has not suffered actual injury because of the flyer. ECF 20 at 9-10. But the complaint and Magee's declaration dispel that contention.

In the defamation context, actual injury encompasses an array of harms, including "not only out-of-pocket expenses, but also harm inflicted by impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Draghetti v. Chmielewski*, 416 Mass. 808, 815-16 (1994). Magee's complaint alleges, as a factual matter—and Cunningham has stipulated to the accuracy of those allegations for purposes of her motion—that "Scores of community members saw the flyer at the meeting and it damaged their opinion of Ms. Magee." ECF 18, ¶ 79. That harm to Magee's reputation is independently sufficient to satisfy the anti-SLAPP statute's actual-injury requirement.

If there were any doubt that Magee experienced actual injury from the flyer, however, her declaration accompanying this opposition disposes of it. The declaration describes serious anxiety, depression, and other mental and physical health issues relating to the flyer. *See* Ex. 1,

Decl. of Lamikco Magee, ¶¶ 9-17. Magee's friends who were aware of the flyer promptly reached out to sympathize and offer support, a strong indication that the flyer damaged her reputation. *Id.* ¶ 10. In concert with other developments at the school, the flyer produced so much trauma that Magee could not work. *Id.* ¶ 12. She used all her sick days and then had to rely on additional leave from the sick bank committee. *Id.* In the aftermath of the flyer's publication, she suffered severe social anxiety and rarely left her house. *Id.* ¶ 13. She attended therapy sessions regularly to help process the trauma. *Id.* ¶ 14. Even after returning to the school, the fact that she was forced to work around people she knew had helped Cunningham distribute the flyer made the work environment a hostile one. *Id.* ¶ 15. Those are all actual injuries recognized under Massachusetts law. *E.g.*, *477 Harrison Ave., LLC v. Jace Boston, LLC*, 477 Mass. 162, 175 (2017) (emotional and reputational harms, including anxiety, sufficient to constitute actual injury).

Given the nature of the flyer's allegations, the harm to Ms. Magee's reputation is hardly surprising. Indeed, allegations of criminal wrongdoing and professional malfeasance are so inherently harmful that Massachusetts law treats them as defamatory per se, meaning they are ordinarily actionable without proof of economic loss. *See Ravnikar v. Bogojavlensky*, 438 Mass. 627 630 (2003).

Cunningham is welcome to probe the factual bases of Magee's flyer-related injuries during discovery. At this juncture, however, Magee's unrebutted, sworn assertions of harm from the flyer—particularly in concert with the allegations of harm in the complaint—more than suffice to carry her burden under the second part of the second stage of the anti-SLAPP framework. For that reason, Cunningham's motion to dismiss Magee's defamation claim under the anti-SLAPP statute should be denied.

**B. Cunningham has forfeited her Rule 12(b)(6) argument for dismissing Magee's defamation claim.**

In a sentence at the end of her brief, Cunningham suggests that the First Amendment and Massachusetts Declaration of Rights might also supply grounds for dismissing Magee's defamation claim under Rule 12(b)(6). But Cunningham never develops that argument, and her passing reference to the First Amendment and the Massachusetts Declaration of Rights isn't enough to preserve it. *See Rocafort v. IBM Corp.*, 334 F.3d 115, 121 (1st Cir. 2003) ("Passing reference to legal phrases and case citation without developed argument is not sufficient to defeat waiver."); *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 997 n.8 (1st Cir. 1990) ("issues adverted to in passing, without any attempt at developed argumentation, are waived"); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). By failing to present any federal or state constitutional argument to which Magee might respond, Cunningham has forfeited her Rule 12(b)(6) argument for dismissing Magee's defamation claim.

## CONCLUSION

The Court should deny Cunningham's motion in its entirety.

Respectfully submitted, this 5th day of September, 2024.

By: */s/ Arnold J. Lizana*
Arnold J. Lizana, Esq., BBO # 546161
alizana@attorneylizana.com
Law Offices of Arnold J. Lizana III
1175 Peachtree Street NE, 10th Floor
Atlanta, GA 30361
Phone (404) 207-1559
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 5th day of September, 2024.

Subscribed under penalty of perjury.

*/s/ Arnold J. Lizana*
Law Offices of Arnold J. Lizana III
BBO # 546161
1175 Peachtree Street NE, 10th Floor
Atlanta, GA 30361
Tel./Fax 877-443-0999
alizana@attorneylizana.com