UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAMIKCO TWANET MAGEE,<br><br>    Plaintiff,<br><br>    v.<br><br>AMHERST-PELHAM REGIONAL PUBLIC SCHOOLS, MICHAEL MORRIS, DOREEN CUNNINGHAM, and DOUGLAS SLAUGHTER,<br><br>    Defendants. | Civil Action No. 24-30049-MGM |

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S SPECIAL MOTION TO DISMISS
PURSUANT TO M.G.L. c.231, § 59H, AND MOTION
TO PARTIALLY DISMISS UNDER FED. R. CIV. P. 12(b)(6)
(Dkt. No. 19)

September 30, 2025

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

Lamicko Magee ("Plaintiff") brings this action against Amherst-Pelham Regional Public Schools ("ARPS"), Michael Morris (the former superintendent at ARPS), Doreen Cunningham (the former Assistant superintendent of Diversity, Equity, Inclusion, and Human Resources at ARPS), and Douglas Slaughter (the Director of Finance and interim Superintendent at ARPS). Plaintiff's claims arise from her work as a teacher and union leader at ARPS, her applications for open ARPS positions, and actions taken by Cunningham and others in response.

Plaintiff's operative second amended complaint asserts seven counts, sounding in both state and federal law. In her federal claims, Plaintiff asserts that ARPS violated Title VII of the Civil

1

Rights Act (Count III), and all defendants violated her First Amendment rights pursuant to 42 U.S.C. § 1983 (Count VII). Plaintiff's state law claims are for defamation against Doreen Cunnigham (Count I) and Douglas Slaughter (Count II), retaliatory harassment against ARPS (Count IV) as well as Michael Morris and Douglas Slaughter (Count VI), and racial discrimination in violation of Mass. Gen. Laws. ch. 151B against ARPS (Count V).  Defendant Cunningham has filed a Motion to Dismiss for Failure to State a Claim and Special Motion to Dismiss Pursuant to Mass. Gen. Laws ch. 231, § 59H, the Massachusetts Anti-Strategic Lawsuit Against Public Participation ("Anti-SLAPP") statute. (Dkt. No. 19.)[1] Specifically, Defendant has moved to dismiss Counts I (defamation) and VIII (breach of contract) under both the Anti-SLAPP statute and Fed. R. Civ. P. 12(b)(6).[2] For the reasons that follow, the court will deny Defendant's motion to dismiss.

## II.   MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court accepts all well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor, but "do[es] not credit legal labels or conclusory statements." *Cheng v. Neumann*, 51 F.4th 438, 443 (1st Cir. 2022). "While a district court is generally limited to considering facts and documents that are part of the

---

[1] Because Cunningham is the only defendant who filed a motion to dismiss, the court refers to her as "Defendant" throughout this opinion.

[2] The court has federal question subject-matter jurisdiction under 28 U.S.C. § 1331 due to the federal claims, and it has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a) because the state claims "are so related" to the federal claims "that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

complaint, it may also consider documents incorporated by reference in the complaint, matters of public record, and other matters susceptible to judicial notice." *Newton Covenant Church v. Great Am. Ins. Co.*, 956 F.3d 32, 35 (1st Cir. 2020) (internal quotations and original alterations omitted). Dismissal is appropriate if the complaint fails to establish at least one "material element necessary to sustain recovery under some actionable legal theory." *N.R. by and through S.R. v. Raytheon Co.,* 24 F.4th 740, 746 (1st Cir. 2022) (internal quotations omitted).

### III.   BACKGROUND

Between 2022 and 2023, Defendant worked as an assistant superintendent and human resources director at ARPS, where Plaintiff was a teacher and the head of the teachers' union: the Amherst-Pelham Education Association ("APEA"). In early 2023, Plaintiff applied to an opening for an ARPS principal position. Defendant and others who were on the search committee for the principal position signed a non-disclosure agreement through which they agreed not to disclose the identity of job applicants.

Simultaneously, as the search for a new principal was underway, on or about April 18, 2023, Morris, the then-Superintendent of ARPS, requested that an investigation be initiated in response to a Title IX complaint filed by a parent on behalf of their child alleging that a guidance counselor had engaged in transphobic behavior. (*See* Second Am. Compl., Dkt. No. 18-3 ("Investigation Report")). On May 9, 2023, a newspaper article alleged that additional staff at Amherst Regional Middle School ("ARMS") had engaged in similarly offensive behavior towards students. (*See id.* at 1.) Before and after the publication of the article, staff, parents, and students came forward to report that ARMS staff had engaged in misconduct in violation of ARPS's policies. (*See id.*) In response, the School Committee Chair, Ben Harrington, requested that an investigation be pursued regarding allegations raised against several individuals, including Defendant. (*See id.*)

In response to these allegations, the APEA grew increasingly frustrated with Defendant's and others' failure to appropriately address allegations of ARMS staff participating in sexual harassment and misconduct against LGBTQ students. On May 13, 2023, the APEA made a joint public statement, which was submitted to the School Committee, providing several reasons behind a majority vote of no confidence against Defendant and Morris. (*See id.* at 46, ¶ 91.) After the May 13 meeting, the ARPS School Committee scheduled an emergency, public meeting for May 16, 2023. The meeting was called to have participants discuss whom to appoint as temporary superintendent (a position for which Defendant was eligible) and to express potential concerns regarding how Defendant and others handled allegations of ARMS employees engaging in inappropriate and offensive behavior towards students.

Plaintiff alleges that, in anticipation of the May 16 meeting, Defendant wrote, printed, and distributed flyers accusing Plaintiff of: having been involved in a high profile cheating scandal that occurred in another state, having a criminal record, attempting to hide that criminal record, engaging in unethical behaviors in her previous job, and attempting to coerce other union members to sign documents against Defendant. In the meeting, which approximately 200 people attended virtually and in-person, Defendant submitted a written statement to the School Committee (that was read publicly) in which she discussed her record as Assistant Superintendent, the reasons for which she would decline to be temporary Superintendent, the fact that Plaintiff had applied for and been rejected for the vacant principal position, and how Plaintiff was a "woman scorned" as a result of that rejection.

## IV.    DISCUSSION

Defendant argues that under the Anti-SLAPP statute, her involvement in the publication of the flyer (the basis for the defamation count) and her written statements (the basis for the breach of

4

contract count) are protected from liability because they constitute "petitioning activity." Defendant also argues Plaintiff failed to state a claim under Fed. R. Civ. P. 12(b)(6) because she did not adequately plead damages resulting from the alleged breach of contract when Defendant violated a non-disclosure agreement by revealing information protected by that agreement about Plaintiff. In addition, Defendant argues her petitioning activities, protected under the First Amendment or the Massachusetts Declaration of Rights, serve as a separate basis for dismissal under Fed. R. Civ. P. 12(b)(6).

In response, Plaintiff argues dismissal of her breach of contract claim under the Anti-SLAPP statue is not appropriate because the statute only protects petitioning activity and only when petitioning activity serves as the sole basis for Plaintiff's claim, neither of which Defendant has satisfied. Second, Plaintiff argues her defamation claim should not be dismissed under the Anti-SLAPP statute because Defendant's purported petitioning activity lacks a reasonable basis in fact or in law and injured Plaintiff. Regarding the Rule 12(b)(6) arguments, Plaintiff contends she adequately alleged injury from Defendant's violation of the nondisclosure agreement, and Defendant failed to properly develop her federal and state constitutional arguments for dismissing the defamation claim under Rule 12(b)(6). The court agrees with Plaintiff.

A. <u>Mass. Gen. Laws ch. 231, § 59H (Massachusetts Anti-SLAPP statute)</u>

Section 59H of the Anti-SLAPP statute provides a mechanism for the early dismissal of "meritless suits brought to discourage individuals from exercising their constitutional right of petition." *Bristol Asphalt, Co. v. Rochester Bituminous Prods., Inc.*, 227 N.E.3d 1019, 1026 (Mass. 2024). To evaluate whether a special motion to dismiss under the Anti-SLAPP statute is appropriate, a two-step framework is used. First, the movant "must show that the challenged count has no substantial basis in conduct other than or in addition to the special motion proponent's alleged petitioning

activity." *Bristol Asphalt, Co.*, 227 N.E.3d. at 1037. "Mixed claims, that is, those based on a proponent's petitioning along with substantial conduct other than or in addition to the petitioning activities [are] best addressed in the course of ordinary litigation, where both sides' claims and defenses can be fully analyzed based on a more complete record, not special motions to dismiss." *Id.* at 1036. If the "proponent (of the special motion) cannot make the requisite threshold showing, the special motion to dismiss is denied." *Id.* at 1037.

At the second step, the burden shifts to the special motion opponent to show that the special motion proponent's exercise of its right to petition was "devoid of any reasonable factual support or any arguable basis in law and caused actual injury to the [special motion opponent]." *Duracraft Corp. v. Holmes Products Corp.* 691 N.E.2d 935, 938 n.6 (Mass. 1998) (alterations made). In the defamation context, actual injury includes "harm inflicted by impairment of reputation and standing in community, personal humiliation, and mental anguish and suffering." *Draghetti v. Chmielewski*, 626 N.E.2d 862, 868 (Mass. 1994) (quoting *Stone v. Essex County Newspapers, Inc.*, 330 N.E.2d 161 (1975)).

    1. <u>Plaintiff's Breach of Contract Claim Survives the First Step of the anti-SLAPP Framework</u>

Defendant cannot make the threshold showing that the written statement she submitted to the School Committee was "petitioning" activity given that the "government cannot 'petition' itself within the meaning of G.L. c. 231, § 59H." *Moriarty v. Mayor of Holyoke*, 883 N.E.2d 311, 316 (Mass. App. Ct. 2008) (holding that mayor and assistant city solicitor did not engage in "petitioning activity" by making statements to the media and to the city council, because mayor and assistant solicitor were acting as city's agents rather than as citizens.).

Defendant submitted the written statement regarding Plaintiff's failed principal candidacy to the school committee (in which she also defended her job performance and responded to allegations

6

lodged against her) in her official capacity as an Assistant Superintendent. In her written statement, she referred to ARPS's practices as "our practices"; described internal, official deliberations; and signed the statement with her official title as Assistant Superintendent and HR Director. Her statement, therefore, amounted to her official testimony meant to address critiques about her performance and ARPS's official acts (such as the search for a principal). *See Kobrin v. Gastfriend,* 821 N.E.2d 60, 65 (Mass. 2005) (denying Anti-SLAPP motion because government witness' testimony was not petitioning activity). Accordingly, the circumstances surrounding the submission and content of the statement demonstrate that Defendant cannot meet her burden at step one, as "the government cannot petition itself within the meaning of G.L. c. 231, § 59H." *Moriarty*, 883 N.E.2d at 316.

The court therefore concludes Defendant has not demonstrated that she engaged in petitioning activity as to the statement regarding Plaintiff's failed principal candidacy, as it is clear this statement was made in Defendant's capacity as a government employee rather than as a private citizen.

Even if Defendant could show she engaged in petitioning activity when she submitted her written statement, Plaintiff's breach of contract claim is not based *solely* on Defendant's petitioning activity. Rather, the breach of contract claim is based in part on a "preexisting contractual agreement." *Columbia Plaza Assocs. v. Ne. Univ.*, 227 N.E.3d 999, 1011 (Mass. 2024) Moreover, the Massachusetts Supreme Judicial Court recognizes that "[m]any preexisting legal relationships may properly limit a party's right to petition, including enforceable contracts in which parties waive rights to otherwise legitimate petitioning." *Duracraft Corp.* 691 N.E.2d at 942. Accordingly, "[b]ecause a substantial factual basis for the [breach of contract is] the allegation that [Defendant] acted in violation of [her] contractual agreement[] . . . , [Defendant] failed to meet its threshold burden of

showing that [this] claim [is] based solely on [her] petitioning activity." *Columbia Plaza*, 227 N.E.3d at 1011.

The court will therefore deny Defendant's Special Motion to Dismiss as to the breach of contract claim.

    2. <u>Plaintiff's Defamation Claim Survives the Second Step of the Anti-SLAPP Framework</u>

In opposing Defendant's motion, Plaintiff only argues that Defendant fails at the second step of Anti-SLAPP framework at to the defamation claim; she does not argue Defendant has failed to show petitioning activity as to the flyer at step one. Therefore, the court assumes, as to the flyer, that Defendant can satisfy the first step and moves directly to the second step.

Plaintiff's defamation claim survives the second step of the Anti-SLAPP framework because Plaintiff has demonstrated that the statements in the flyer are false. *See Bristol Asphalt, Co.,* 227 N.E.3d at 1039. Plaintiff alleges—and the investigative report attached to the complaint supports— that she has never been involved in the any teacher cheating scandal, has never been charged in connection with that scandal, was not accused of any unethical behaviors in her previous position, and did not solicit signatures against Plaintiff. Defendant, for her part, does not challenge the accuracy of the complaint's allegations in her motion but, instead, "accepts" the complaint's factual allegations as "true" for purposes of her motion to dismiss. (Dkt. No. 20 at 2.)

Moreover, during the investigation into the claims made by students, staff, and parents, the investigator asked Defendant about all the statements on the flyer. In response to the allegation that Plaintiff had her criminal record sealed, Defendant claimed she had seen information about it online (without specifying which website), but that she did not know if it was true. (*See* Dkt. No. 18-3, pg. 48, Investigation Report.) The investigator searched online for any information regarding Plaintiff being involved in the alleged cheating scandal and found no such information. (*See id.* at n.24.) The

investigator also asked Defendant about the flyer's statement regarding Plaintiff being "chased out of Springfield for unethical behaviors." (*Id.*) Defendant responded by stating that she knew the person in Springfield, but she refused to say who it was. (*See id.*) In her motion to dismiss, Defendant has not asserted that any of the allegations made in the flyer are, in fact, true. Therefore, Plaintiff has carried her burden of demonstrating that all of the statements in the flyer are "devoid of any reasonable factual support." *See Duracraft Corp.,* 691 N.E.2d. at 942.

Plaintiff has also shown actual injury. *See Bristol Asphalt, Co.,* 227 N.E.3d at 1038; *Draghetti,* 626 N.E.2d at 868. The flyers were distributed at a meeting attended in person by approximately 50 people and were also left on windshield wipers just outside the meeting (*See* Am. Second Compl., Dkt. No. 18. at ¶¶ 71-72.) The flyers contained highly inflammatory accusations and innuendos directed at Plaintiff, having the likely effect of damaging Plaintiff's reputation among its recipients. Plaintiff further suffered when the flyer was posted to ARPS's website for 53 days, providing anyone with internet access the ability to view it (*See id.* ¶ 80.) Plaintiff also alleged she suffered from "anxiety, fear, depression, insomnia, and extreme stress so severe that she cannot perform her work functions," as well as "mental anguish and emotional distress," because of the false allegations contained in the flyer. (*Id.* ¶ 120; *id.* at 30("Prayer for Relief").)

Accordingly, the court denies Defendant's Special Defendant's Special Motion to Dismiss as to the defamation claim as well.

B.  <u>Defendant's Remaining Arguments for Dismissal under Fed. R. Civ. P. 12(b)(6)</u>

Defendant's other arguments in moving to dismiss Plaintiff's defamation and breach of contract claims are based on a failure to state a claim under Fed. R. Civ. P. 12(b)(6). The court will address these claims separately.

1. Count I (Defamation)

Defendant asserts generally that the First Amendment and the Massachusetts Declaration of Rights serve as additional grounds for dismissing Plaintiff's defamation claim under Rule 12(b)(6). To establish a defamation claim under Massachusetts law, Plaintiff must show that: "1) the defendant made a statement, concerning the plaintiff, to a third party; 2) that the statement was defamatory such that it could damage the plaintiff's reputation in the community; 3) that the defendant was at fault in making the statement; and 4) that the statement either caused the plaintiff economic loss . . . or is actionable without proof of economic loss." *Shay v. Walters*, 702 F.3d 76, 81 (1st Cir. 2012) (citations omitted and alterations made).

Here, Plaintiff plausibly alleges Defendant created and distributed the flyer that included false statements regarding Plaintiff. Plaintiff alleges her reputation was negatively affected based on the magnitude of the baseless claims against her, the number of people who saw the flyer, and her colleagues' concern after seeing the flyers. Plaintiff also alleges that because of the flyer, she has suffered from depression as well as anxiety which has led to her having to take days off from work. Defendant's general reference to the First Amendment and the Massachusetts Declaration of Rights, without any explanation or attempt at developing an argument, is insufficient to support dismissal of Plaintiff's defamation claims. *See Rocafort v. IBM Corp.*, 334 F.3d 115, 122 (1st Cir. 2003) (explaining that "a party has a duty to incorporate all relevant arguments in the papers that directly address a pending motion. This duty includes analyzing relevant statues and presenting applicable legal authority," as well as "explaining arguments squarely and distinctly") (internal quotations and citations omitted)). Accordingly, Defendant's motion to dismiss Plaintiff's defamation claim under Rule 12(b)(6) is denied.

2. Count VIII (Breach of Contract)

Defendant argues Plaintiff failed to state a claim for breach of contract because Plaintiff's complaint does not allege the damages element. However, "[u]nder Massachusetts law, 'a person who is injured by a breach of contract has a right to judgment even if the breach caused no harm.'" *AnywhereCommerce, Inc. v. Ingenico Inc.*, 665 F. Supp. 3d 181, 207 n. 20 (D. Mass. 2023) (quoting *Flynn v. AK Peters, Ltd.*, 377 F.3d 13, 23 (1st Cir. 2004)). Plaintiff claims to have suffered "mental anguish and emotional distress" and "substantial humiliation as a result of the broad disclosure of [her failed candidacy]." (*See* Am. Second Compl., Dkt. No. 18 at ¶ 159, pg.30 (Prayer for Relief).) While damages may ultimately prove limited (or even nominal), the complaint adequately alleges Plaintiff was injured by the potential breach. Therefore, Defendant's motion to dismiss Plaintiff's breach of contract claim under Fed. Civ. Rule 12(b)(6) is denied.

V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Failure to State a Claim and Special Motion to Dismiss Pursuant to M.G.L. c. 231, §59H (Dkt. No. 19) is denied.

It is So Ordered.

      /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge